UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| EILEEN LENTZ, | : | Civil Action No. 05-3047 (AET) |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| GRACO INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

Currently before the Court is an expansive Motion by Plaintiff, Eileen Lentz ("Plaintiff") filed as a Motion to Amend, but containing a plethora of discovery issues ("Moving Brief"). See Docket Entry No. 19. Defendants Gusmer Corp., et al. ("Defendants") filed a brief in opposition to Plaintiff's numerous requests for relief ("Opposition Brief"). See Docket Entry No. 21. Plaintiff thereafter filed a brief in further support of her motion ("Reply Brief"). See Docket Entry No. 26. The Court considered the Motions without oral argument pursuant to FED.R.CIV.P. 78. For the foregoing reasons, Plaintiff's Motions are GRANTED in part and DENIED in part.

I. Background

Plaintiff instituted this action in June 2005 claiming discrimination due to a perceived disability related to a lumbar spine injury. Opposition Brief at 3. Plaintiff was employed by Defendants for 25 years advancing to the position of Senior Engineering Technician. Amended Complaint at ¶ 11 [Docket Entry No. 11] (hereinafter "Compl."). Plaintiff asserts that during her time with Defendants she was "always relegated to a support or assistant position under Electrical Engineering Management." Id. at ¶ 13. In April 1999, Plaintiff suffered a lumbar spine injury as a result of a slip and fall accident in the parking lot of Defendants property in Lakewood, New Jersey. Opposition Brief at 3. Plaintiff asserts that this injury rendered her disabled. See generally

Compl.  Plaintiff further asserts that her dedicated performance at work was always appreciated by Defendants until after her accident.  Id. at ¶ 18.  Plaintiff further alleges that following the accident Defendants showed its "true colors" by contesting her workers compensation claim and "not granting reasonable accommodation" to her.  Id. at ¶¶ 18-19.

Plaintiff alleges specific conduct by Defendants and Defendants' employees that were discriminatory due to her disability.  Eventually Plaintiff filed a 3 count complaint, alleging a hostile work environment, pretext and retaliation for wrongful termination, and intentional infliction of emotional distress.  Id. at ¶¶ 11-103.

The parties appeared for an Initial Rule 16 Conference on October 19, 2005, and a Scheduling Order was issued on October 24, 2005.  See Docket Entry No. 8.  The parties also exchanged document discovery and completed some depositions.  Plaintiff now seeks to 1) amend her complaint to include a cause of action of gender based wage discrimination pursuant to the NJLAD and Equal Protection Act, 2) preclude Defendants from obtaining certain documents from Plaintiff's medical chart in Dr. Phair's office, 3) preclude Defendants from obtaining information from the files of Robert Cretella, Esq., Plaintiff's workers compensation attorney, 4) compel Defendants to produce Plaintiff's schematic drawings from her employment with Defendants, 5) compel Defendants to produce certain records of Michael Bellantoni ("Bellantoni"), and 6) to compel the deposition of Laura Heidel at a convenient location.  See generally Moving Brief.

II. Analysis

    A.  Motion to Amend

        1.  Standard of Review

Plaintiff seeks leave to file an Amended Complaint to include a cause of action for gender

based wage discrimination. Defendants oppose Plaintiff's Motion, asserting that Plaintiff's motion should be denied because the proposed amendment is futile. It is well established that leave to amend the pleadings is generally given freely. Foman v. Davis, 371 U.S. 178, 182 (1962). Notwithstanding this liberal standard, courts will deny a motion to amend on grounds of dilatoriness or undue delay, prejudice, bad faith or futility. See Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000); Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005). If there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004). In reviewing a motion to amend, the court looks only at the pleadings. Pharm. Sales & Consulting Corp. v. J.W.S. Delavau, Co., Inc., 106 F. Supp. 2d 761, 765 (D.N.J. 2000). The Court finds that there are no allegations of undue delay, bad faith or prejudice, and therefore Plaintiff's Motion shall not be denied on these grounds.

Defendants assert that Plaintiff's Motion should be denied as futile because it is time barred and Plaintiff fails to state a cause of action upon which relief can be granted. The standard of review for futility requires the court to consider whether the complaint, as amended, would survive a motion to dismiss for failure to state claim. Alvin v. Suzuki, 227 F.3d at 121. Simply stated, futility of amendment requires that the pleading as amended does not state a claim upon which relief can be granted. In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). The court must make a determination of "whether the amendment is sufficiently well-grounded in fact or law to demonstrate that it is not a frivolous pursuit." Phillips v. Borough of Keyport, 179 F.R.D. 140, 144 (D.N.J. 1998). However, the "court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983), cert. denied 464 U.S. 937 (1983). To make this determination, the court should

examine whether each claim would survive a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) should be granted where, accepting the well-pleaded allegations in the complaint, the plaintiff is not entitled to relief. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Accordingly, the "complaint must set forth sufficient information to suggest that there is some recognized legal theory upon which relief may be granted." Eli Lilly v. Roussel Corp., 23 F. Supp. 2d 460, 475 (D.N.J. 1998)(internal citation omitted). Moreover, the court must view all allegations in the complaint in a light most favorable to the plaintiff. Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989). In other words, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1280, 1384-85 (3d Cir. 1994). Moreover, a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistent with the plaintiff's allegations. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).

### 2. Futility - Statute of Limitations

It is well established that when federal court jurisdiction is based upon diversity of citizenship, the court must apply the substantive law of the state where it sits. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). It is also well settled that the applicable statute of limitations period is a substantive issue of law. Guaranty Trust Co. v. York, 326 U.S. 99 (1945); Dixon Ticonderoga Co. v. Estate of O'Connor, 248 F.3d 151 (3d Cir. 2001).

The Equal Pay Act itself does not contain a statute of limitations, however the Portal to Portal Act of 1947, 29 U.S.C. § 251, *et seq.*, provides that a cause of action must "[commence] within two

years after the cause of action accrued" or if the claims arise out of a "willful violation" then the limitations period is extended to three years. 29 U.S.C. § 255(a); Miller v. Beneficial Management, 977 F.2d 834, 842 (3d Cir. 1992). Moreover, a plaintiff need not exhaust any administrative remedies prior to filing a complaint under the Equal Pay Act. Cty. of Washington v. Gunther, 452 U.S. 161, 174 n. 14 (1981).

When determining when a cause of action accrues in employment discrimination suits "the proper focus ... is on the time of the discriminatory act, not the point at which the consequences of the act become painful." Miller, 977 F.2d at 842 (citing Chardon v. Fernandez, 454 U.S. 6, 8 (1981))(emphasis in original). "However, if the alleged discriminatory conduct is a continuing violation, the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first." Id. (citing Bronze Shields, Inc. v. New Jersey Dept. of Civ. Serv., 667 F.2d 1074, 1081 (3d Cir. 1981), cert. denied 458 U.S. 1122 (1982))(internal quotations omitted). Furthermore, "[s]ex-based, discriminatory wage payments constitute a continuing violation of the Equal Pay Act." Miller, 977 F.2d at 843 (citing Hodgson v. Behrens Drug Co., 475 F.2d 1041, 1050 (5th Cir. 1973), cert. denied, 414 U.S. 822 (1973)).

In the instant action, Plaintiff's Complaint was filed on June 15, 2005. Docket Entry No. 1. However, because "plaintiff was on unpaid leave from December 2003, she received her last paycheck from the company shortly thereafter." Opposition Brief at 18. Even if the Court were to find that Plaintiff adequately pled willfulness, the last continuing violation would have to occur on or after June 15, 2004. Nevertheless, Plaintiff's proposed Amended Complaint and voluminous submissions to the Court in support of her motion do not adequately address this simple point. Plaintiff simply relies on blanket statements that "[Plaintiff] 'officially' stayed on [Defendants']

5

payroll records for four months into 2005, although not paid for all that time" and that "[t]here should be no statute of limitation problem." Reply Brief at 7. Plaintiff fails to cite to a single of the almost 1000 pages of exhibits submitted to the Court to support these contentions. Moreover, Plaintiff's proposed Amended Complaint fails to identify when she received her last paycheck or when her cause of action accrued within the statute of limitations.

The Court believes that Plaintiff is attempting to argue that remaining on Defendants' official payroll should be construed as a continuing violation tolling the statute of limitations until she was removed from the payroll records in 2005. However, the Court does not have enough factual information to determine the validity of this assertion. On the other hand, the Court does have information supporting that Plaintiff was no longer paid by Defendants after early 2004, and therefore is time barred from pursuing this claim. Therefore, because the Court does not have sufficient information to evaluate Defendants's contention that Plaintiff's claim is time barred, Plaintiff's Motion to Amend is DENIED WITHOUT PREJUDICE. Plaintiff is granted leave to refile her Motion to Amend and is instructed to identify why her claim is not barred by the statute of limitations.

B.  Motion for a protective order preventing production of Dr. Phair's file

Dr. Phair, plaintiff's treating physician, was deposed by Defendants pursuant to a subpoena served by Plaintiff on December 8, 2006. Opposition Brief at 24. Prior to the deposition, Defendants received a copy of Plaintiff's medical file from the doctor pursuant to an authorization provided by Plaintiff. Id. During the course of the deposition, Defendants realized that "a significant portion of the documents contained in plaintiff's file had not been disclosed prior to the deposition." Id. Plaintiff contends that Dr. Phair "has become hostile to his own patient" and that she did not

6

"waive the privilege for disclosure of her 'legal file' when the subject arose" during Dr. Phair's deposition. Moving Brief at 23. Plaintiff further asserts that "[n]othing from the specific legal or insurance end or costs were released from [Dr. Phair's] record keeping on [Plaintiff] to any attorney for Plaintiff or Defendant[s]." Reply Brief at 14-15. Defendants asserts that Dr. Phair is not plaintiff's agent and therefore Plaintiff's Counsel's communication with him should not have been for the purpose of providing legal advice to plaintiff, and thus this information is not privileged. Opposition Brief at 26. Defendants further assert that "Dr. Phair testified that much of what is in the contested portion of the plaintiff's chart is communication between his office, the workers' compensation carrier and the attorneys handling the matter on both sides" and therefore Plaintiff has no standing to assert a privilege. The Court further notes that Plaintiff provides no legal support for why the remaining portion of Dr. Phair's file should be considered privileged.

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); See also Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994). Moreover, "[t]he privilege attaches to agents and representatives of counsel whose services are necessary for effective representation of the client's interests." Cellco Partnership v. Certain Underwriters at Lloyd's London, No. 05-3158, 2006 WL 1320067 at *2 (D.N.J. May 12, 2006)(internal citation omitted). The Court finds that Plaintiff has not established that Dr. Phair is acting as her agent, and therefore his self described "legal file" is not protected by the attorney-client privilege.

The Court also notes that Plaintiff suggests the notion that Dr. Phair's file is protected by the doctor-patient privilege, but neither makes any assertions to support this point, nor cites any case law

7

regarding this privilege. Nevertheless, in the interest of judicial economy, the Court will address whether the unreleased portions of Dr. Phair's are protected by the physician-patient privilege. The Court notes that there is no federal physician-patient privilege and that New Jersey law should be applied. See Wei v. Bodner, 127 F.R.D. 91 (D.N.J. 1989). In Wei the Court also held that the New Jersey privilege should be "restrictively construed" and that the "need for confidentiality is not absolute and must be subrogated to more important interests of society." Id. at 97 (citing Stempler v. Speidell, 100 N.J. 368 (1985) and McIntosh v. Milano, 168 N.J. Super. 466 (Law Div.1979)). Moreover, N.J.S.A. § 2A:84-22.2 states that the physician-patient privilege is binding only if the Court finds: 1) that the communication in question was indeed a confidential communication between the doctor and the patient; and 2) that the patient or the doctor reasonably believed that the communication was *necessary for diagnosis.* N.J.S.A. § 2A:84-22.2 (emphasis added).

      In the instant matter Dr. Phair has testified that the information that has not been released consists primarily of business and legal correspondence. Opposition Brief Ex. S at 55:8-25. "The doctor specifically states that he did not consider this information to be privileged in any way." Opposition Brief at 25 (citing Opposition Brief Ex. S at 56:10-15). From the materials presented to the Court, it is clear that the information not produced during discovery by Dr. Phair primarily consist of legal and business correspondence and therefore the Court finds that the physician-patient privilege should not apply.

      The Court therefore finds that Plaintiff has not effectively asserted any valid privilege to the non-produced materials in Dr. Phair's file. Moreover, the Court questions how Plaintiff can assert that the materials are privileged when she also certifies that they have not even been produced to her. Therefore, Defendants' Motion to Compel discovery from Dr. Phair is GRANTED. Production of

8

the materials shall be effectuated following the instructions contained in the Order accompanying this Opinion.

      C. Motion for a protective order preventing production of Robert Cretella, Esq.'s file

Plaintiff has asserted the attorney-client privilege over documents in the file kept by Robert Cretella, Esq. ("Cretella"), Plaintiff's workers compensation attorney. Opposition Brief at 27. Cretella was deposed on December 18, 2006, pursuant to a subpoena served by Defendants. Id. He also provided two separate certifications "confirming the entire progress of the Worker's Compensation Court towards finding Plaintiff a permanent award for disability." Moving Brief at 23.

However, Defendants argue that neither Plaintiff nor Cretella asserted the attorney-client privilege with respect to the matters about which he testified at his deposition. Opposition Brief at 27-28. Defendants further assert that "[b]y using Mr. Cretella as a witness, first by obtaining and providing his certifications to the defendant[s] and then by failing to raise any objection or asserting a privilege during his deposition, the plaintiff waived her privilege." Opposition Brief at 28 (citing Aysseh v. Lawn, 186 N.J. Super. 218, 223 (Ch. Div. 1982)). Defendants asserts that "it was incumbent upon [Cretella] to assert the attorney-client privilege on behalf of the plaintiff, or for the plaintiff to do so herself, since she was present at the time" otherwise the privilege should be deemed waived. Opposition Brief at 28. Plaintiff responds simply that a privilege exists, that Cretella provided a privilege log of his records, and that she has endeavored to act in the good faith at all times to produce discovery. Reply Brief at 16.

The Court finds that the determination of whether the attorney-client privilege has been waived or should be pierced, is not an issue that should be brushed over quickly. In fact, the

privilege has been described as "the judicial recognition that the public is well served by sound legal counsel based on full and candid communication between attorneys and their clients." Kinsella v. Kinsella, 150 N.J. 276, 298 (1997) (quoting Fellerman v. Bradley, 99 N.J. 493, 502 (1985))(internal quotations omitted). Moreover, the burden of establishing the existence of the privilege belongs to the party asserting the privilege. In re Grand Jury, 603 F.2d 469, 474 (3d Cir.1979); Wei v. Bodner, 127 F.R.D. 91, 94 (D.N.J.1989)(citing Brock v. Gerace, 110 F.R.D. 58 (D.N.J.1986)).

In the instant matter, the parties have merely provided the Court with a copy of the record and have essentially requested that the Court sort through it. The materials submitted include full transcripts of Cretella's deposition testimony, certifications, and numerous correspondence exchanged between the parties and their experts. In contrast, Plaintiff's moving and reply briefs only cite to one Ninth Circuit unpublished memorandum opinion as support that the privilege exists and collateral sources should be used to obtain any materials. See Moving Brief at 24; Reply Brief at 16 (citing Lucas v. J.C. Penney Co., 1997 U.S. App. Lexis 33653 (9th Cir. November 21, 1997)). On the other hand, Defendants cite to the New Jersey state court's decision in Aysseh and its predecessor Sicpa North America. See Opposition Brief at 28 (citing Aysseh, 186 N.J. Super. at 223; Sicpa North America v. Donaldson Enterprises, 179 N.J. Super. 56, 61-62 (Law Div. 1981)).

Regardless, the parties have failed to present adequate argument to the Court regarding this issue. The parties have grossly neglected to include any analysis of case precedent in the Federal and State courts of New Jersey, and have not clearly presented enough facts to warrant that the privilege be upheld, deemed waived or pierced. Therefore, Defendants Motion to Compel production of discovery from Cretella is DENIED WITHOUT PREJUDICE. The accompanying Order shall contain instructions outlining how this issue should be properly presented to the Court.

D. Defendants' Motion for a Protective Order to bar production of schematic drawings

Plaintiff also seeks production of her engineering drawings and electrical/electronic schematic drafting from Defendants. Moving Brief at 20. Plaintiff asserts that these drawings are "definitely her best evidence of her greater contribution and unequal pay, [because] she was literally instructed to sign as an Engineer..." Id. Plaintiff also asserts that she previously produced a formal supplemental discovery demand for the drawings and specifications. Id. at Ex. Q. Plaintiff insists that a stipulation would not be sufficient and proposes that she be allowed to inspect and determine a viable selection of the drawings to present to the fact finder. Id. at 20-21. Defendants assert that Plaintiff's request is unclear with respect to the actual information she is seeking. Defendants further assert that the drawings may number in the hundreds, if not thousands and "[b]ased on the vague description in the plaintiff's demand and the follow up correspondence from her attorney, the defendants are unable to identify documents responsive to this demand." Opposition Brief at 29 (citing Cert. of Darrell. J. Davis, Esq. at Ex. O). The Court once again notes, that the parties have failed to cite any rule or case is support of their positions.

First and foremost, the Court notes that litigants before this Court have an obligation to 'meet and confer' to attempt to resolve any discovery disputes. See L.Civ.R. 37.1(a)(1). When the parties are unable to resolve a discovery dispute they are required to present the issue to the Court via conference call or letter. Id. "This presentation shall precede any formal motion." Id. In the present matter, there has been no indication that the parties attempted a 'meet and confer' and there has not been any informal presentation of the issues to the Court. Regardless, the Court will address the instant motion.

The Federal Rules adopt a liberal policy for providing discovery in civil matters. As

provided in Rule 26, a party may obtain discovery regarding any matter provided that it is relevant based on either a "claim or defense of any party" or the "subject matter involved in the action." See generally FED.R.CIV.P. 26(b)(1). "Courts have construed this rule liberally creating a broad range for discovery which would encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Jones v. DeRosa, 238 F.R.D. 157, 163 (D.N.J. 2006)(citing Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000)(internal quotations omitted)). "However, the scope of discovery has ultimate and necessary boundaries." Id. (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947)).

FED.R.CIV.P. 34 states that parties may make requests for documents "which are in the possession, custody or control of the party upon whom the request is served." FED.R.CIV.P. 34(a). The Rule also mandates that the "request shall set forth either by individual item or by category, the items to be inspected, and describe each with reasonable particularity." FED.R.CIV.P. 34(b). However, pursuant to FED.R.CIV.P. 26 the Court may limit discovery if It determines that compelling compliance with a discovery request would not be in the interest of justice. FED.R.CIV.P. 26(b)(2). Specifically, "the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense..." FED.R.CIV.P. 26(c). Upon the showing of good cause , the Court may, in its discretion, enter a protective order "for which the movant bears the burden of persuasion." Caver, 192 F.R.D. at 162.

In the instant matter, Defendants merely provide broad assertions and a certification that Plaintiff's request for drawings was overly broad and unduly burdensome. Opposition Brief at 29. Specifically, Defendants state that they received Plaintiff's request on December 6, 2006, and at the time the Gusmer Plant in Lakewood, New Jersey was "already undergoing the process of being shut

down as part of company reorganization." Opposition Brief at Ex. O. Defendants continue that the drawings had already been packed up and shipped to Canton, Ohio where they were copied onto microfiche. Id. Defendants then certify that "[t]he original hard copy drawings were then shredded."[1] Id. Finally, Defendants assert that the microfiche copies of the drawings are only filed by part and/or project number and are not searchable by name of the individual who signed the drawing, and thus "there is no way that we can locate information to respond to her demand for drawings at this time." Id.

The Court finds that Defendants have not adequately shown that providing the drawings to Plaintiff would be unduly burdensome. There are many relevant questions which would better guide a decision regarding the production of the drawings that both parties have wholly failed to address. For example, how many drawings were transferred from New Jersey to Ohio? Does either party have records that reflect what projects or part numbers were worked on by Plaintiff? And, can the drawings be narrowed down in any other way, such as the date they were created?

Nevertheless, the parties have again failed to provide the Court with enough information, case law or argument to fully analyze the situation presented. Therefore, the Court finds that Defendants have failed to establish good cause why the drawings should not be produced, and their Motion for a Protective Order shall be DENIED WITHOUT PREJUDICE. The Court instructs the parties to meet and confer to attempt to resolve this dispute, prior to re-raising the issue with the Court.

---

[1] The Court reminds the parties of their obligations under the Local and Federal Rules to adequately preserve evidence. The Court will not hesitate to impose sanctions for any intentional spoliation of evidence.

E.  Plaintiff's Motion to Compel production of Michael Bellantoni's file

Plaintiff also seeks the production of the full employment file of Michael Bellantoni ("Bellantoni") who she intends to use as a comparator. Moving Brief at 16. Plaintiff specifically seeks a file of Defendants' Human Resource Manager, Linda Bonfiglio ("Bonfiglio") where she likely collected "return to work notations for Bellantoni just like she did for [Plaintiff]." Moving Brief at 17. Plaintiff served a subpoena on Defendants' excess insurance carrier as directed by opposing counsel, however she asserts that this attempt was fruitless. Defendants argue that Bellantoni's medical history is not at issue in this litigation and that barring any waiver by Bellantoni, Defendants are bound by law to keeps his medical file confidential. Opposition Brief at 29-30. Defendants also include a Certification signed by Bellantoni, asserting that he does not wish to waive any confidentiality of his filed. Id. at Ex. P.

The Court notes that Plaintiff and Defendants once again have not been clear about their dispute, have not met and conferred as required by L.Civ.R. 37.1, and have not provided a legal basis for denying or granting the application. Nevertheless, Defendants clearly establish that both medical and non-medical employee files exist for Bellantoni and are within their custody and control. Opposition Brief at 29-30. Plaintiff has indicated that she is "merely seeking Bellantoni's claim forms; final forensic evaluations and final determination from the worker's compensation forum as to his percentage of impairment for permanency." Moving Brief at 17-18. Plaintiff also seeks notations or certifications of Bellantoni's treating physician and the actual requirements of the Employer's Human Resource Department. Id. at 18. Plaintiff also offers to enter into a confidentiality protective order to protect Bellantoni's privacy.

The Court finds that Bellantoni has failed to establish any harm that would result from the

14

production of his "non-medical" employee file. The information in this file may be or may lead to the discovery of relevant admissible evidence. However, the Court further finds that compelling disclosure of Bellantoni's medical employee file is not appropriate at this time, if ever. Defendants have certified that releasing this file would be violative of the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq*., and the Americans with Disabilities Act, 42 U.S.C. §§ 12111, *et seq*. Moreover, Plaintiff has failed to articulate reasons why the Court should compel production, and fails to specify why certain documents sought are relevant or necessary in this litigation. The Court further notes that a portion of Bellantoni's file has been produced to Plaintiffs and was utilized during his deposition. Opposition Brief at Ex. H 11:1-24. Therefore, Defendants are instructed to provide Plaintiff with a copy of Bellantoni's non-medical file. The Court further instructs that Plaintiff may serve a subpoena for the production of Bellantoni's medical file, to which Defendants may file a Motion to Quash or Modify or for a protective order.

      F. Motion to Compel the Deposition of Laura Heidel

Plaintiff also seeks to Compel the Deposition of Laura Heidel ("Heidel") who is currently on medical leave from her position with Defendants. Moving Brief at 22. Defendants assert that they are more than willing to produce Heidel when her condition improves. Opposition Brief at 32. The Court notes that some time has passed between the filing of the Motion and the issuance of this Opinion, during which Heidel's condition may have improved. Therefore, the Motion to Compel Heidel's deposition is DENIED WITHOUT PREJUDICE. The parties are to meet and confer to determine a time frame within which to depose Ms. Heidel provided her condition has improved. If the parties are unable to agree, they shall notify the Court and a teleconference shall be held to resolve this issue.

III.  CONCLUSION

      For the aforementioned reasons Plaintiff's Motions are GRANTED in part and DENIED in part.  An appropriate form of Order shall be entered.


                                        s/ Tonianne J. Bongiovanni  
                                        **HON. TONIANNE J. BONGIOVANNI**  
                                        **UNITED STATES MAGISTRATE JUDGE**


Dated: August 13, 2007